**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:15-cv-01890-AWI-BAM |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S *EX PARTE* APPLICATION FOR DEFAULT JUDGMENT AND FINAL JUDGMENT OF FORFEITURE** (Doc. 14) |
| v. | |
| APPROXIMATELY $145,000.00 IN U.S. CURRENCY, | |
| Defendant. | |

In this civil forfeiture action, Plaintiff United States of America ("Government" or "Plaintiff") seeks (1) default judgment against the interests of Omar Lopez Hernandez and Irma Cardenas in approximately $145,000.00 in U.S. Currency and (2) entry of a final forfeiture judgment to vest in the Government all right, title and interest in the defendant currency. No opposition to the Government's motion has been filed, and the time to file an opposition has expired. The matter was heard on July 8, 2016, before United States Magistrate Judge Barbara A. McAuliffe. Assistant United States Attorney Jeffrey Spivak appeared on behalf of the Government. No other parties or persons appeared. For the reasons set forth below, the Court RECOMMENDS that the Government's application for default judgment and for final judgment of forfeiture be GRANTED.

///

///

1

**FACTUAL BACKGROUND**

This is a civil action *in rem* to forfeit to the Government approximately $145,000.00 in U.S. Currency ("the Defendant Currency") pursuant to 21 U.S.C. § 881(a)(6).[1]  The Defendant Currency was seized on July 23, 2015, at State Route 99 and Le Grande Road, in Merced County, California.

On July 23, 2015, at approximately 1:08 p.m., California Highway Patrol (CHP) was working on State Route 99 in Merced County, California, in a marked patrol vehicle and traveled northbound on State Route 99 when the CHP officer's attention was drawn to a silver Pontiac G6, bearing California license plate number 6UPK042.

The Pontiac appeared to be traveling above the 65 miles per hour (mph) maximum speed limit. The CHP officer estimated the Pontiac's speed to be about 72 mph.  The officer activated his radar antenna and received a reading of 70 mph.  The officer initiated a vehicle stop on the Pontiac for a violation of California Vehicle Code § 22349(a) – Exceeding the Maximum Speed Limit of 65 mph.

The driver and sole occupant of the vehicle was identified as Omar Lopez Hernandez. Hernandez was advised of the reason for the stop and was asked for his driver's license.  Hernandez stated that he had forgotten it at home.  Hernandez was asked if he could produce any identification. Hernandez related that he did not currently possess any identification.

The officer conducted a license and registration check through CHP dispatch which revealed that Hernandez did not possess a valid California driver's license.  A tow truck was requested by the officer to impound the vehicle because Hernandez was an unlicensed driver.

When asked about his travels, Hernandez stated that he had come from Fresno, California, where he had been for two weeks.  Hernandez then changed his story and said he had only been in Fresno for two days.  Hernandez was asked why the back seat was missing from his vehicle. Hernandez advised that he had forgotten it at home.

Hernandez was advised that he was only receiving a verbal warning for speeding, but was issued a citation for driving without a license.  Hernandez was also advised that his vehicle was being impounded because he did not have a driver's license.  The officer conducted an inventory of the

---

[1]    The factual background is stated as alleged in the Government's verified complaint.  Doc. 1.

Pontiac.   During the inventory, the officer observed a plastic bag located in the rear passenger compartment.   The bag contained a large amount of U.S. Currency.   The plastic bag was the only item located in the rear passenger compartment.   The officer asked Hernandez if the U.S. Currency was his. Hernandez initially stated that it was not his.   Hernandez was asked to whom the U.S. Currency belonged.   Hernandez then stated that it was his and should be $150,000.   Hernandez said that he got the U.S. Currency from a friend and then stated that he did not want to talk anymore.

The officer then utilized his Patrol Narcotics Detection Canine ("PNDC") "Laika" to conduct an exterior and interior sniff search of the Pontiac for the odor of narcotics.   Laika is a six-year-old Belgian Malinois and has been extensively trained as a PNDC.   Laika has been employed by the California Highway Patrol since November 2011.   Laika did not alert on the exterior of the Pontiac. When Laika was deployed on the interior of the Pontiac, Laika gave a positive alert to the odor of a controlled substance on the plastic bag and the U.S. Currency.

The currency was located inside two plastic bags in the following denominations:  184 x $100 bills, 36 x $50 bills, 6011 x $20 bills, 451 x $5 bills, and 5 x $1 bills.[2]   Some of the currency was banded together with rubber bands and some were loose bills.   Based on training and experience, the officer knew that it was not common practice for a reasonable person to transport large amounts of currency in this manner.   However, it is common practice for those involved in drug trafficking to transport currency in this manner.

On July 28, 2015, an agent with the Merced Area Gang/Narcotics Enforcement Team ("MAGNET") listened to and translated Hernandez' recorded jail calls, which were in Spanish. Hernandez identified himself by his name at the start of every call.[3]   On July 23, 2015, at approximately 6:51 p.m., Hernandez called an unidentified female who he referred to as his aunt.   The aunt asked Hernandez what happened.   Hernandez told the aunt that he was doing some work and something went wrong.   The aunt told Hernandez to tell the truth as to what occurred.   Hernandez replied that he was doing badly.   Hernandez was asked if he was caught with anything.   Hernandez

---

[2]   The official and final count by Bank of America was $145,000.00.
[3]   According to the moving papers, Hernandez had been booked into custody on July 23, 2015, and released the following day.  (Doc. 14 at p. 3).

3

told the aunt that it was money.  The aunt asked Hernandez if it was a lot of money, and he replied that it was a lot of money he had when he was arrested.  The aunt then asked Hernandez why he was being investigated or if he had been interrogated.  Hernandez replied that he was "screwed" and that it was "his problem."

On August 19, 2015, an agent with the Drug Enforcement Administration ("DEA") interviewed Irma Cardenas, the registered own of the Pontiac G6 driven by Hernandez at the time of the seizure.  Hernandez was also interviewed.  Cardenas was asked what her relationship was with Hernandez.  Cardenas stated that she had been in a relationship with Hernandez for about 10 years and they resided together in Gold River, California.  Cardenas advised that she and Hernandez have owned the vehicle for about three years.  Cardenas added that they paid about $12,000 for the vehicle and owed about $630 on the vehicle.  Cardenas was asked where Hernandez was employed.  Cardenas advised that Hernandez was working for Everman Drywall in Sacramento, California, but that he had quit working for them about two months ago.   According to the Employment Development Department, as of August 17, 2015, Hernandez was employed by David Everman with no date of termination.

Cardenas was asked how much money Hernandez earned from Everman Drywall.  Cardenas stated that Hernandez earned about $2,200 a month.   When asked if Cardenas had ever seen Hernandez with a large amount of U.S. currency, Cardenas advised that she had never seen Hernandez with a large amount of currency and that there was no logical reason for him to have that much.  Cardenas said that Hernandez told her that he had been arrested with a large amount of U.S. currency, but would not tell her how much or what he was doing with the currency.  Cardenas was advised that Hernandez was stopped with about $145,000 in U.S. currency.  Cardenas stated that she was unaware where Hernandez would have gotten that much money and that there was no reason he would have that much.  Cardenas was asked whether the money was hers and Cardenas stated that she had no ownership of the money.  Cardenas added that she had no idea where it came from.  Cardenas was read the DEA Disclaimer of Title and Interest form for the U.S. currency.  Cardenas was asked if she understood the form and she stated that she did.  Cardenas signed the Disclaimer of Interest form as witnessed by an agent with MAGNET.

Hernandez has a criminal history which includes an arrest in September 2008, by the Sacramento County Sheriff's Office for Felony Burglary.  In December 2008, Hernandez was arrested for Misdemeanor Theft by the Sacramento County Sheriff's Office.  In August 2011, Hernandez was again arrested by the Sacramento County Sheriff's Office for falsely identifying himself to a police officer.

## PROCEDURAL BACKGROUND

On December 17, 2015, the Government filed its complaint for forfeiture *in rem*, alleging that $145,000.00 in U.S. currency ("Defendant Currency") was subject to forfeiture to the Government under 21 U.S.C. § 881(a)(6) because it constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, and proceeds traceable to such an exchange, and was used or intended to be used to facilitate on or more violations of 21 U.S.C. § 841, *et seq*.  On March 7, 2016, based on the allegations of the complaint, the Clerk of the Court issued a Warrant for Arrest of Articles In Rem for the Defendant Currency.  (Doc. 5).  The warrant was executed on March 9, 2016.  (Doc. 6).

According to the Government's Declaration of Publication, a Notice of Civil Forfeiture was published on the official government internet site (www.forfeiture.gov) for thirty days beginning on March 5, 2016. (Doc. 9).

On March 8, 2016, Hernandez was served with notice of this action by first class and certified mail at his last known address of 11260 Coloma Road, Gold River, California 95670.  Both the first class and certified mail parcels were returned to the U.S. Attorney's Office marked as "Not deliverable as addressed, unable to forward."  (Doc.10-1; Declaration of Elisa Rodriquez ("Rodriquez Decl.") ¶ 5 and Ex. A). Hernandez also was served with notice of this action by first class and certified mail at his last known place of residence of 6331 Misty Way, Citrus Heights, California 95621.  The certified mail parcel was returned to the U.S. Attorney's Office marked as "Returned to Send Unclaimed Unable to Forward Return to Sender."  The first class mail parcel was not returned to the U.S. Attorney's Office.  (Doc. 10-1; Rodriquez Decl. ¶ 6 and Ex. B).

On March 8, 2016, Irma Cardenas was served with notice of this action by first class and certified mail at her last known address of 11260 Coloma Road, Gold River, California 95670.  The

1   Domestic Return Receipt was signed by Irma Cardenas Cruz and received in the U.S. Attorney's

2   Office on March 14, 2016.  (Doc. 10-1; Rodriquez Decl. ¶ 7 and Ex. C).

3        To date, neither of the potential claimants: Omar Lopez Hernandez, Irma Cardenas, nor any

4   other potential claimant, filed an answer or otherwise defended the action.  The Clerk entered default

5   as to potential claimants Omar Lopez Hernandez and Irma Cardenas on May 9, 2016.    The

6   Government moved for default judgment on May 31, 2016.

7                               **DISCUSSION**

8   **I.        Sufficiency of the Complaint**

9        The Government contends that the allegations set forth in the Verified Complaint for Forfeiture

10  In Rem and the facts cited "provide ample grounds" for forfeiture of the Defendant Currency.  (Doc.

11  14 at 6-7).  A complaint's sufficiency is a factor to consider when deciding whether to grant default

12  judgment.  *Eitel v. McCool*, 782 F.2d 1470, 1471 1472 (9th Cir. 1986).  Money or other things of

13  value are subject to forfeiture if they are furnished or intended to be furnished in exchange for a

14  controlled substance or listed chemical, are proceeds traceable to such an exchange or are used or

15  intended to be used to facilitate a violation of 21 U.S.C. § 841, *et seq.* 21 U.S.C.§ 881(a)(6).

16       The Government's verified complaint alleges that the Defendant Currency constitutes a thing

17  of value furnished or intended to be furnished in exchange for a controlled substance or listed

18  chemical, and proceeds traceable to such an exchange, and was used or intended to be used to

19  facilitate one or more violations of 21 U.S.C. § 841, *et seq.*  The complaint meets the requirements of

20  Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions,

21  Federal Rules of Civil Procedure, in that it is verified; states the grounds for subject matter

22  jurisdiction, in rem jurisdiction, and venue; describes the property seized and the circumstance of its

23  seizure; and identifies the relevant statutes.  In the absence of assertion of interests in the Defendant

24  Currency, this Court is not in a position to question the facts supporting its forfeiture.  As alleged, the

25  facts set forth a sufficient connection between the Defendant Currency and violations related to

26  controlled substances or listed chemicals to support forfeiture.

27  ///

28  ///

## II.   Notice Requirements

The Fifth Amendment's Due Process Clause prohibits the Government from deprivation of property without "due process of law."  Individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard."  *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S. Ct. 492 (1993).  The Government contends that it provided required notice for the forfeiture of the Defendant Currency.

### A.   Notice by Publication

Supplemental Rule G(4) sets forth the rules for publication of the notice of action in federal forfeiture proceedings.  Rule G(4)(a)(iv)(C) provides that in lieu of newspaper publication, the Government may publish notice by "posting notice on an official internet government forfeiture site for at least 30 consecutive days."

Here, publication occurred on the official internet government forfeiture site (www.forfeiture.gov) for 30 consecutive days beginning on March 5, 2016.  The Government filed its Declaration of Publication on April 4, 2016.  (Doc. 9).

### B.   Personal Notice

When the Government knows the identity of the property owner, due process requires "the Government to make a greater effort to give him notice than otherwise would be mandated" by publication. *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998).  In such cases, the Government must attempt to provide actual notice by means reasonably calculated under all circumstances to apprise the owner of the pendency of the forfeiture action.  *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) (quotations omitted).  "Reasonable notice, however, requires only that the government attempt to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice."  *Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005).

Supplemental Rule G(4)(b)(iii)(A) mirrors this requirement, providing for notice to be "sent by means reasonably calculated to reach the potential claimant."  Additionally, this Court's Local Rule 540 addresses notice to persons known to have an interest in property subject to forfeiture.  The rule requires that a party seeking default judgment in an action in rem to show to the Court's satisfaction

that due notice of the action and arrest of the property has been given by: (1) publication; (2) by personal service on the person having custody of the property; (3) if the property is in the hands of a law enforcement officer, by personal service on the person having custody prior to its possession by law enforcement agency or officer; and (4) by personal service or certified mail, return receipt requested, to every other person who has not appeared in the action and is known to have an interest in the property; provided that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to give such notice without success.  Local Rule 540(a).

In this case, the Government attempted to serve the individual claimants with actual notice by first class mail and certified mail, return receipt requested, as follows:

1.    Omar Lopez Hernandez

On March 8, 2016, the Government provided notice of the forfeiture action to Hernandez through first class mail and certified mail at his last known address in Gold River, California.  Both the first class and certified mail parcels were returned to the U.S. Attorney's Office.  On March 8, 2016, the Government also provided notice of the forfeiture action to Hernandez through first class and certified mail at his last known place of residence in Citrus Heights, California.  Although the certified mail parcel was returned, the first class mail parcel was not.  (Doc.10-1).

2.    Irma Cardenas

On March 8, 2016, the Government provided notice of the forfeiture action to Irma Cardenas through first class and certified mail at her last known address in Gold River, California.  (Doc. 10-1).

Here, as noted previously, the Government completed service by publication and attempted personal service of the complaint, arrest warrant, publication order and other papers regarding this action upon both Omar Lopez Hernandez and Irma Cardenas at their last known addresses.  Although the Government was unable to personally serve Omar Lopez Hernandez, by certified mail, the Court observes that the Government did make diligent attempts to afford notice in the instant case.  This is evident by the Government's attempt to supplement the notice mailing with notice by publication.  Pursuant to Supplement Rule G(4), the Government published notice of the forfeiture proceedings and demonstrated diligent efforts to serve Omar Lopez Hernandez at his last known address and his last known residence.

In sum, the Court finds no notice issues arise as to the Defendant Currency's forfeiture.

**C.     Failure to File Claim or Answer**

Supplemental Rule G(5) requires any person who asserts an interest in or right against the Defendant Currency to file a claim with the Court within 35 days after service of the Government's complaint or 60 days after the first day of publication on an official internet government forfeiture site. Supplemental R. G(4)(b) & (5).  Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing as a party to the forfeiture action.  *Real Property*, 135 F.3d at 1317.

There have been no claims filed by or on behalf of Omar Lopez Hernandez or Irma Cardenas with respect to this action.  The Clerk of Court properly entered defaults against Omar Lopez Hernandez and Irma Cardenas.  (Doc. 11).

**D.     Default Judgment**

The Government seeks judgment against the interests of Omar Lopez Hernandez and Irma Cardenas and final forfeiture judgment to vest in the Government all right, title and interest in the Defendant Currency.

Federal Rule of Civil Procedure 55 provides that a court has discretion to enter default judgment against a party after the clerk has entered the party's default.  In considering whether to enter default judgment, the court considers the following factors: (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits.  *See Eitel*, 782 F.2d at 1471-72.

Here, the *Eitel* factors favor the granting of the Government's ex parte application for default judgment.  First, the Government would be prejudiced by the denial of its motion because the Government would otherwise have to expend additional time and effort litigating an action in which no claimants have appeared.  Second, the Government's claims appear to have merit.  Third, as discussed above, the Government has adhered to the procedural requirements of a forfeiture action, including the filing of a sufficient complaint.  Fourth, the sum of money in dispute here is not

substantial enough to warrant the denial of the Government's motion.  Fifth, there are no genuine disputes as to any material fact.  Sixth, it does not appear that the failure of any claimant to answer is due to excusable neglect.  And finally, although it is always preferable to decide a case on its merits, it is not practicable here where no claimant has appeared to oppose the Government's claims.

**CONCLUSION AND RECOMMENDATION**

For the reasons discussed above, it is HEREBY RECOMMENDED as follows:

1.     The Government's application for default judgment and final judgment of forfeiture be GRANTED; and

2.     Default judgment be ENTERED against the interests of Omar Lopez Hernandez and Irma Cardenas.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __July 8, 2016__          _____/s/ *Barbara A. McAuliffe*_____

                              UNITED STATES MAGISTRATE JUDGE